**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, ) | No. CR-12-1240-TUC-CKJ (BGM) |
| Plaintiff, ) | |
| ) | **REPORT & RECOMMENDATION** |
| vs. ) | |
| Francisco Andres Valencia, ) | |
| Defendant. ) | |

Currently pending before the Court is Defendant Francisco Andres Valencia's Motion to Suppress [Doc. 33]. Defendant is charged with one count of knowingly and intentionally possessing with intent to distribute approximately 112 kilograms of marijuana in violation of 18 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(vii). Indictment [Doc. 5]. Defendant seeks suppression of evidence obtained as a result of an allegedly invalid traffic stop. Pursuant to LRCrim. 5.1, this matter came before Magistrate Judge Macdonald for an evidentiary hearing and a report and recommendation. On January 11, 2013, oral argument was heard by Magistrate Judge Macdonald and the matter taken under advisement. Minute Entry 1/11/2013 [Doc. 40]. The Magistrate Judge recommends that the District Court, after its independent review, deny Defendant's motion.

## I.  FACTUAL BACKGROUND

On May 4, 2012, Agent Todd DeBaun was on duty at the Border Patrol checkpoint on Arizona 191 in Cochise County Arizona. Hr'g Tr. 1/11/2013 [Doc. 43] 17:17-25. Agent DeBaun testified that he has been a Border Patrol agent for a little over twelve (12) years.

*Id.* at 4:12-16; 55:13-20. He is stationed at the Willcox Border Patrol Station, and has lived and worked in the Willcox area for the last twelve (12) years. *Id.* at 4:9-11; 6:2-8; 55:13-20. Agent DeBaun was the acting field operations supervisor at the time of this incident. *Id.* at 5:6-19; 60:9-16. He is currently a supervisor over a special operations team. *Id.* Agent DeBaun testified that he has been in a supervisory role for approximately four (4) years. Hr'g Tr. 1/11/2013 [Doc. 43] 5:6-19.

Agent DeBaun testified that the checkpoint is approximately forty (40) yards from the intersection of Kansas Settlement Road and Arizona 191. *Id.* at 19:2-14; 56:11-19. This checkpoint only checks traffic going northbound. *Id.* at 22:5-9; 23:7-12. Agent DeBaun testified that this is an area notorious for drug trafficking and alien smuggling. *Id.* at 8:2-9:6; 10:9-19; 55:21-56:12. Agent DeBaun further testified that the area surrounding the checkpoint is mostly farming and ranching, with a low population density. *Id.* at 9:7-10; 11:8-12; 23:13-24:8; 56:23-58:11. As such, Agent DeBaun recognizes a large percentage of the people that come through the checkpoint each day. *Id.* at 11:8-13:1; 24:10-13; 58:8-60:5.

On the day of the incident, Agent DeBaun was sitting on a chair at the primary area of the checkpoint between eight (8) and nine (9) in the morning. Hr'g Tr. 1/11/2013 [Doc. 43] 19:15-18; 33:6-11. Agent DeBaun testified that he observed a burgundy Dodge Neon sedan, with a silver hood, approaching southbound on Kansas Settlement. *Id.* 19:19-20:19. The car stopped at the intersection of Kansas Settlement and Arizona 191, paused, and then makes a left turn onto 191 behind Agent DeBaun's position. *Id.* at 19:19-22:4. Behind the Dodge Neon, a white sedan followed. *Id.* Agent DeBaun testified that there was less than an eighth of a mile, and estimated approximately five seconds elapsed, between the two vehicles. *Id.* at 26:22-27:2; 30:22-24; 63:23-64:5. Agent DeBaun further testified that the driver of the white vehicle gunned the engine as it followed the burgundy Dodge Neon. Hr'g Tr. 1/11/2013 [Doc. 43] at 26:22-27:11; 78:22-79:1. It appeared to Agent DeBaun that the white sedan was attempting to catch up to the burgundy Dodge Neon. *Id.*

Agent DeBaun testified, based upon his knowledge and experience, that tandem

1 driving is a common tactic used by drug or alien smugglers. *Id.* at 13:13-15:5; 66:15-19; 79:9-18. Further, the vast majority of narcotics vehicles use a lead car, load car strategy. *Id.* Agent DeBaun described this strategy whereby a lead vehicle acting as a scout to obtain information regarding law enforcement. *Id.*; 72:6-12. The lead vehicle will some times drawing attention to themselves in an effort to attract law enforcement's attention, so that the load vehicle can go past. Hr'g Tr. 1/11/2013 [Doc. 43] at 13:13-15:5; 72:6-9. Upon observing the burgundy Dodge Neon and the white sedan, Agent DeBaun believed that the two vehicles were traveling in tandem. *Id.* at 30:25-31:5.

Agent DeBaun testified that he had not seen the burgundy Dodge Neon before and did not recognize its passengers. *Id.* at 21:2-9; 24:10-16; 31:17-22. Agent DeBaun described the male driver of the burgundy Dodge Neon and his passenger as leaned back or reclined low in their seats as they turned off of Kansas Settlement onto Arizona 191. *Id.* 19:19-20:1; 21:10-22:4; 24:17-25:11; 66:25-67:5. Agent DeBaun found this posture unusual, because normally people will glance at Border Patrol agents, but those who attempt to hide are often engaged in illegal activity. *Id.* at 25:12-26:14; 38:25-39:1; 69:23-70. Agent DeBaun testified that the driver of the white sedan had black, bushy hair, both hands gripping the steering wheel, pulling his body up to the steering wheel. Hr'g Tr. 1/11/2013 [Doc. 43] at 27:15-28:11; 30:3-21; 78:11-21. Agent DeBaun found this behavior to be indicative of stress or a flight reflex. *Id.* at 29:19-30:21. Agent DeBaun identified the driver of the white sedan as the Defendant Francisco Andres Valencia. *Id.* at 52:5-14.

Agent DeBaun testified that later in the day on May 4, 2012, at approximately 12:30 p.m., he parked his fully marked Chevy Tahoe at the intersection of Rucker Courtland Road and Arizona 191. Hr'g Tr. 1/11/2013 [Doc. 43] at 34:9-36:14. He parked at that particular location to see if the burgundy Dodge Neon came back through. *Id.* Agent DeBaun testified that he observed the burgundy Dodge Neon coming from the South on Arizona 191. *Id.* at 37:5-25. The same two individuals were in the vehicle, but not reclined as far back in their seats as they had been earlier in the day. *Id.* As the burgundy Dodge Neon passes Agent DeBaun's location, the passenger looks at the agent in his side mirror, turns around to look

through the passenger window, and then adjusts the rearview mirror and sits back in his seat. *Id.* at 38:1-39:22; 69:11-22; 70:24-72:1. Agent DeBaun testified that this behavior was abnormal for the typical driver or passenger, but consistent with the behavior of tandem drivers or vehicles. Hr'g Tr. 1/11/2013 [Doc. 43] at 38:1-39:22; 80:21-81:15. Agent DeBaun did not follow the burgundy Dodge Neon, because he was waiting for the white sedan, which he believed to be the load vehicle. *Id.* at 39:23-40:15. Agent DeBaun based this assessment on the order in which he had previously observed the two vehicles and his prior experience. *Id.*; 42:2-43:3.

Within approximately one (1) minute, the white sedan passed Agent DeBaun's position, driven by the same bushy-haired individual. *Id.* at 40:16-21; 67:22-68:1. Agent DeBaun testified that the white sedan was within eyesight, or not more than a mile, of the burgundy Dodge Neon, although there was a white Ford Ranger traveling between the two. *Id.* at 40:16-41:23.

Once the white sedan passed Agent DeBaun's position, he pulled out to follow it. Hr'g Tr. 1/11/2013 [Doc. 43] at 43:5-9; 81:12-15. As Agent DeBaun pulled his vehicle out and approached the white sedan, it attempted to pass the white Ford Ranger; however, oncoming traffic prevented such a maneuver. *Id.* at 43:10-44:24; 81:16-82:1; 84:1-18; 85:8-87:3. Agent DeBaun testified that there was a lot of southbound traffic, particularly hay trucks, at the time. *Id.* As Agent DeBaun approached the white sedan, he observed the vehicle's license plate number, AWB9377. *Id.* at 44:25-45:7. Agent DeBaun testified that this license plate number indicated that it was a recently registered vehicle. Hr'g Tr. 1/11/2013 [Doc. 43] at 45:10-47:3; 53:21-55:7. Agent DeBaun further explained that in approximately 2007 or 2008, Arizona went to a seven (7) digit license plate number, and began numbering them AAA, AAB, AAC, and so forth. *Id.* The AW combination was new to Agent DeBaun, suggesting a newer plate. *Id.*

Agent DeBaun testified that he contacted sector radio to obtain further information regarding the white sedan. *Id.* at 47:4-13. Agent DeBaun was informed that the registered owner of the white sedan was from Phoenix. *Id.*; 79:15-80:3. Upon receiving this

1  information, in addition to his previous observations, Agent DeBaun decided to effectuate
2  a stop of the white sedan. Hr'g Tr. 1/11/2013 [Doc. 43] at 47:10-25; *see also* 73:25-74:7.
3  Agent DeBaun activated his emergency lights and sirens; however, the white sedan did not
4  pull over immediately. *Id.* at 48:1-50:3. Agent DeBaun testified that the driver of the white
5  sedan looked in his mirrors and was talking on his cellular telephone. *Id.* at 48:1-51:7. The
6  driver did not begin using his cellular telephone until after Agent DeBaun activated his
7  emergency lights. *Id.* at 51:6-7. During this time, Agent DeBaun radioed back to sector
8  radio to inform them that the driver of the white sedan had not pulled over yet. *Id.* 49:19-
9  50:4. Ultimately, the white sedan pulled over and Agent DeBaun identified the driver as
10 Defendant Valencia. Hr'g Tr. 1/11/2013 [Doc. 43] at 52:5-14. Agent DeBaun discovered
11 one hundred and fifty-two (152) bricks of marijuana in the trunk of the white sedan. *Id.* at
12 52:18-22.

## II. ANALYSIS

Defendant Valencia seeks suppression of all evidence in this matter because Agent DeBaun "did not have sufficient lawful justification to conduct a traffic stop upon the vehicle driven by Mr. Valencia." Def.'s Mot. to Suppress [Doc. 33] at 4.

### A. *Reasonable Suspicion*

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 750, 151 L.Ed.2d 740 (2002) (citing *Terry v. Ohio*, 392 U.S. 1, 9, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)). For the police to conduct a valid stop, they must "have a reasonable suspicion supported by articulable facts that criminal activity may be afoot." *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) (internal quotes and citation omitted). In the context of searches conducted by the Border Patrol, factors to be considered for reasonable suspicion include, but are not limited to: "1) characteristics of the area; 2)

proximity to the border; 3) usual patterns of traffic and time of day; 4) previous alien or drug smuggling in the area; 5) behavior of the driver, including obvious attempts to evade officers; 6) appearance or behavior of passengers; 7) model and appearance of the vehicle; and 8) officer experience." *U.S. v. Garcia-Barron*, 116 F.3d 1305, 1307 (9th Cir. 1997) (internal quotes and citation omitted) (holding a defendant's use of a rental car and attempt to avoid checkpoint established reasonable suspicion; noting that rental cars were commonly used in smuggling). Whether there was reasonable suspicion for the stop must be evaluated by looking at the totality of the circumstances. *United States. v. Alvarez*, 899 F.2d 833, 836 (9th Cir. 1990). What may seem to be innocuous conduct when viewed in isolation may be appropriately considered when determining if reasonable suspicion exists under the totality of the circumstances; thus, it is inappropriate to view factors in isolation and to give no weight to factors which may have an innocent explanation. *Arvizu*, 534 U.S. at 273-75, 122 S.Ct. at 750-51.

Under the totality of the circumstances in this case, Border Patrol Agent DeBaun possessed reasonable suspicion to stop Defendant. Although each fact in the circumstances previously described, taken individually, may appear innocent, it had significance to a trained law enforcement officer.

The Court finds Agent DeBaun's testimony credible. Through his experience, the Agent DeBaun knew the area in question to be an area notorious for drug trafficking and alien smuggling. Hr'g Tr. 1/11/2013 [Doc. 43] at 8:2-9:6; 10:9-19; 55:21-56:12. Agent DeBaun relied upon his initial sighting of the burgundy Dodge Neon and white sedan traveling together, and the unusual postures of their respective occupants. *Id.* at 19:19-22:4; 24:17-25:11; 66:25-67:5. He did not recognize the occupants, although he recognizes most of those who travel through the checkpoint location. *Id.* at 11:8-13:1; 21:2-9; 24:10-16; 31:17-22; 58:8-60:5. Based upon his experience and knowledge, Agent DeBaun suspected that the burgundy Dodge Neon and white sedan were a lead car and a load car driving in tandem. *Id.* at 13:13-15:5; 30:25-31:5; 39:23-40:15; 42:2-43:3; 72:6-12. Agent DeBaun then parked his vehicle at a location to further observe whether the two vehicles returned later in

the day. *Id.* at 34:9-36:14. The two vehicles did in fact return and pass by the agent. Hr'g Tr. 1/11/2013 [Doc. 43] at 34:9-36:14. The passenger of the burgundy Dodge Neon made a noticeable effort to observe Agent DeBaun as they drove past his position. *Id.* at 38:1-39:22; 69:11-22; 70:24-72:1; 80:21-81:15. The white sedan followed shortly thereafter. *Id.* at 40:16-21; 67:22-68:1. When Agent DeBaun pulled out behind him, the driver, Defendant, made an effort to pass the vehicle traveling between him and the burgundy Dodge Neon in a manner which Agent DeBaun described as an evasive maneuver. *Id.* at 40:16-41:23; 43:5-44:24; 81:12-82:1; 84:1-18; 85:8-87:3. Agent DeBaun identified the license plate as a newer issue, and sector radio confirmed that the vehicle was registered out of Phoenix. *Id.* at 45:10-47:13; 53:21-55:7; 79:15-80:3. Therefore, with all of this information, Agent DeBaun effectuated a stop. Based on the totality of these circumstances, the Court finds that the Border Patrol agents had reasonable suspicion to stop Defendants. *See Arvizu*, 534 U.S. at 273-75, 122 S.Ct. at 750-51.

### III. CONCLUSION

Border Patrol Agent DeBaun, based upon the totality of the circumstances, possessed reasonable suspicion that criminal activity may be afoot. *See Sokolow*, 490 U.S. at 7, 109 S.Ct. at 1585. As such, his stop of the white sedan driven by Defendant Valencia did not violate the Fourth Amendment.

### IV. RECOMMENDATION

For the foregoing reasons, the Magistrate Judge recommends that the District Court deny Defendant Francisco Andres Valencia's Motion to Suppress Evidence [Doc. 33].

Pursuant to 28 U.S.C. §636(b) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed.

R. Civ. P. 72(b)(2). If objections are filed, the parties should use the following case number: **CR-12-1240-TUC-CKJ**.

Failure to file timely objections to any factual or legal determination of the Magistrate Judge in accordance with Fed. R. Crim. P. 59 will result in waiver of the right of review.

DATED this 8th day of February, 2013.

_____
Bruce G. Macdonald
United States Magistrate Judge